Marshall, C. J.
The petition filed in this cause in the court of common pleas was skilfully drawn with the evident purpose of claiming the benefit of the provisions of Section 11631, General Code, pertaining to vacation of judgments after term, and also the benefit of any equitable right Helen Bennett might have to vacate the judgment on the ground of fraud. Section 11631 contains many paragraphs, but we need examine only paragraphs 5 and 8, because nothing is claimed by counsel from any of the other paragraphs. The pertinent portions of Section 11631 provide:
“The common pleas court or the court of appeals may vacate or modify its own judgment or order, after the term at which it was made. * * *
*356 “5. For erroneous proceedings against an infant or person of unsound mind, when the condition of such defendant does not appear in the record, nor the error in the proceedings. * * *
“8. For errors in a judgment, shown by an infant within twelve months after arriving at full age as prescribed in section eleven thousand six hundred and three. ’ ’
The status of Helen Bennett in the original proceeding for sale of the entailed estate will be discussed later in this opinion, and for the present it will be assumed that she was a party to that proceeding and an infant at the time the suit was filed and at the time the sale was made and confirmed. Upon that assumption, and assuming that her infancy appeared in the record, she-would clearly not come within the provisions of the fifth paragraph, because that paragraph would only entitle her to the relief prayed for in the event her condition did not appear in the record, or the error in the proceedings. It is nowhere alleged in the petition, neither is it claimed in the brief or argument of counsel, that the errors complained of did not all appear in the record of the proceedings. A careful examination of the petition fails to disclose any allegations of error, except as found in the record of the original proceedings.
Let us next determine whether the plaintiff, Helen Bennett, is entitled to a vacation of the judgment and orders, under favor of paragraph 8. The suit was filed within twelve months after arriving at full age, and if this case comes within the purview of Section 11603, General Code, she is entitled to relief. That section provides: “It shall not be necessary to *357 reserve in a judgment or order the right of a minor to show cause against it after attaining the age of majority; but in any case in which, but for this section, such reservation would have been proper, within one year after his majority, the minor may show cause against such order or judgment. ’ ’
Before the enactment of that section it was the uniform practice to make a reservation in the decree reserving to infant defendants the right after arriving at full age, to show cause against a decree. That section has been under consideration by this court several times and it has uniformly been held that the only purpose of the section is to simplify the practice, to make it no longer necessary to make a special reservation in the judgment, and to fix the limitation of time within which the minor may show cause without such reservation, after arriving at full age. It has further been held that the right to show cause has not been amplified by that statute, and that notwithstanding the enactment of that section the right extends only to those cases in which the reservation would have been proper under the ancient practice. (Carey v. Kemper, 45 Ohio St., 93.) The question arises therefore whether the rule formerly applied to all cases against infants; and, if not, to what cases the rule did apply.
While this subject has been vaguely approached in some of the former decisions of this court, there is no case containing any discussion of this subject which can be said to be decisive of any branch of it. The only case worthy of review is Long v. Mulford, 17 Ohio St., 484. That was a case brought by infants, after arriving at majority, to set aside certain conveyances made by them under and by virtue *358 of the court, which orders were made in a cause in which they were defendants during their minority. The original suit was one to compel conveyance pursuant to a contract alleged to have been made by their father, where the conveyance was not completed during his lifetime. The subject-matter of the controversy was their inheritance from the estate of their father. A careful reading of the case discloses that the infants were not specifically ordered to make the conveyance, but it was adjudged that the title be quieted in those who were claiming under the alleged contract with the father. These facts should be borne carefully in mind in view of other observations which follow. In the opinion in that case, on page 507, referring to the above-quoted code provision, the court stated: “The right, of course, does not exist in proceedings under special statutory provisions, nor in cases where sales are ordered to be made.” This observation of Judge White is purely obiter and has no relation to the facts of the controversy then before the court. That proceeding was not under any special statute, neither was any sale ordered to be made in that case. To thus limit the operation of Section 11603, General Code, would give it such a narrow range of operation and render it so uncertain and indefinite that it would be much better to disregard it entirely and in each instance make in every decree a special reservation of the rights of the infant. It is significant that in that case the court did grant the relief prayed for and did order the decree to be vacated on the ground of fraud. It is further significant that in both the syllabus and the opinion of Judge White there was a discussion of the duty of a court, *359 and more especially of guardians ad litem in suits in which infants are parties defendant. We quote from page 502 of the opinion, as follows: “The appointment of a guardian ad litem is not a mere matter of form. A suit against an infant cannot be prosecuted without such guardian; and the object of the requirement is to secure to the infant a proper defense. ‘It is the duty of a guardian ad litem to ascertain from the infant and his friends, or from other sources of information, what are the legal and equitable rights of his ward. And it is the special duty of the guardian to bring those rights directly under the consideration of the court for decision.’ ” In some of the earlier cases, decided in other states of the Union, and in England, a distinction was sought to be made between cases in which the infant was directed to make or join in a conveyance, and cases in which the title was divested by the decree itself without affirmative act on the part of the infant. Other cases, however, did not recognize this distinction, and looked to the effect of the transaction rather than the form, and observed that the results were the same if the infant was deprived of property rights, whether by making the decree immediately operate as a conveyance or by requiring the infant to execute a conveyance on arriving at majority. Any such distinction could have no force in Ohio, because it is provided in Section 11590, General Code, that a judgment for a conveyance shall have operative effect without the formality of the execution of an instrument of conveyance. Other cases have held that the infant should in all cases have his day in court, after arriving at full age, where his inheritance was affected. If the rule were *360 still one at common law, we should be inclined to adhere to any well-settled, well-understood construction of. the rule that had received general application, but inasmuch as the common-law rule is unsettled, and the rule is no longer one at common law, but has been declared in Ohio by statute, and its limitations are not defined in the statute and no ambiguity is found in the language employed in the statute, the only proper construction to give it would be to give the statute universal application and declare that in all cases of judgments against infants they shall be permitted to show cause within twelve months after arriving, at full age. In all cases of special statutory proceedings where real estate is sold, and where the statutes have been faithfully complied with, and in which rights of innocent purchasers have intervened subsequently to the sale and before the infant arrives at full age, the rule must necessarily be subject to proper exceptions, which need not be discussed in the decision of this cause, because in the instant case no rights of innocent purchasers have intervened. The present claimants of the legal title to the real estate in question obtained the same by devise in the last will and testament of Mrs. Fleming, for which no consideration was paid and upon which devise no conditions were imposed. Any other construction placed upon Section 11603 would render that section entirely valueless. If any exceptions are to be written into its provisions, they should be so written by the general assembly and not by this court by means of judicial interpretation.
As to what the effect may be of vacating this judgment, it is not necessary to discuss at length, at this *361 time, but a full discussion of principles will be found in 10 Encyclopedia of Pleading & Practice, under tbe title “Infants,” pages 716 to 721, inclusive.
Having found that Section 11603 is applicable, it yet remains to be determined whether the petition makes allegations which entitle the plaintiff Helen Bennett to relief. This question is one of considerable difficulty, because the allegations of the petition are somewhat meager and indefinite and for the most part present only conclusions of law. Those difficulties are increased by the fact that although both lower courts sustained a demurrer to the petition, in neither court did the plaintiff ask leave to amend, but in both courts stated that she did not desire to further plead. The petition is, however, . based upon allegations of fraud alleged to have been perpetrated under the forms of law, in bringing about the sale of the real estate, that fraud was practiced in obtaining the orders and judgments, and that the orders and judgments were erroneous. It was alleged among other things that the order was erroneous in not making a finding that no substantial injury would be done to those having an estate in expectancy. An examination of the statutes under which these proceedings were instituted and prosecuted, being Section 11925 et seq., General Code, discloses that by virtue of the provisions of Section 11926 it was only necessary to make parties defendant “All persons m being who are interested in the estate, or, by the terms of the will, deed, or other instrument creating the entailment or other estate thereafter, or may become interested therein as heir, reversioner, or otherwise.” No provision was made *362 whereby the interests of unborn children might be safeguarded otherwise than upon the theory that persons in being, who were made parties defendant, whose interests were identical with those who might thereafter be born, would make such defenses as might be necessary and proper, and that when the court should make orders affecting such defendants it would be presumed that the interests of the unborn would be equally protected and safeguarded. This is what is known as the doctrine of virtual representation, which has never been before the courts of Ohio for determination in any reported case, but has been well established by the courts of other states, to-wit, in Kent v. Church, 136 N. Y., 10; Perkins v. Burlington, 112 Wis., 509; Hale v. Hale, 146 Ill., 227; Houston v. Houston, 62 N. C., 95; Harrison v. Walton’s Exr., 95 Va., 721, and Schley v. Brown, 70 Ga., 64.
The rule established by those and other cases is concisely stated in 23 Cyc., 1245, as follows: “Persons having a remote, contingent, or expectant interest in realty are bound by the judgment rendered in an action concerning the property, although not made parties to the suit, if the holder of the first estate of inheritance is a party, as he represents them. And estates limited over to persons not in esse are represented by the living owner of the first estate of inheritance, so that a decree ixí a suit to which the first holder, a living person, is made a party, will conclude the rights of after-born remainder-men.”
It is conceded by counsel on both sides of the instant controversy that the doctrine of virtual representation is sound and the case will therefore be *363 disposed of upon the theory that the law is constitutional and that all parties including Helen Bennett were before the court. It is only upon this theory that Helen Bennett can intervene in the instant case. The disentailment statutes have been held to be constitutional in the following cases: Nimmons v. Westfall, 33 Ohio St., 213; and Oyler v. Scanlan, 33 Ohio St., 318. If those statutes are constitutional, then proceedings can be prosecuted to final conclusion by making defendants only those remaindermen in esse, and Helen Bennett’s' rights can be worked out only by means of the doctrine of virtual representation.
It follows from the foregoing that since Matilda B. Bennett is a sister of Helen Bennett, and Matilda was a party defendant for whom a guardian ad litem was appointed, and a finding was made that the sale of the premises would do no substantial injury to Matilda, the finding against Matilda was a finding against all those unborn of her class.
Another error complained of is that no appraisement was made prior to the sale. It is true that the decree provided that the sale should be made as upon execution, but this was at best only a rule of court, because the statute does not require an appraisement to be made. Being a rule of court, it could be disregarded by the court making the order, and this must be true in this case, because Section 31929, General Code, provides that it shall only be necessary that the court on examination of the proceedings find “that the sale was fairly conducted and made, and that the price obtained is the reasonable value of the estate sold * * For aught that appears in this petition, the court did so find, and *364 this would obviate the necessity for an appraisement.
The other error complained of is that the taxes and costs were paid out of the fund arising from the sale. We agree with the opinion of the court of appeals that the amount involved is too trifling to-justify the vacation of the judgment on that ground, and the conclusion is therefore reached that no errors have been shown to justify vacating the orders and judgment.
Helen Bennett became of age August 22,1918, and this petition was not filed until April 5, 1919, being more than seventy days after she arrived at full age, and this proceeding does not therefore come under the provisions of Section 12270, General Code.
It only remains to be determined whether the petition alleges fraud of such character as will justify a suit in equity to vacate this decree as against Helen Bennett. It has confessedly become absolute against all other persons interested. This proceeding having been begun within twelve months after Helen Bennett arrived at full age, the petition has been filed in time to preserve her rights, if the petition makes allegations entitling her to the equitable relief prayed for. Her right to bring an independent suit has been recognized by this court in four former decisions, Long v. Mulford, supra, Carey v. Kemper, supra, Coates v. Chillicothe Branch of State Bank of Ohio, 23 Ohio St., 415, and Rammelsberg v. Mitchell, 29 Ohio St., 22. The lower courts have found that her allegations of fraud are so general as to amount to only legal conclusions, and that they are not sufficiently specific to render the petition *365 good as against demurrer. The petition is undoubtedly open to this criticism, but we are unable to agree that the allegations should be entirely disregarded on this ground. A motion to make definite and certain ought undoubtedly to be sustained, but it does not follow that the court should disregard an allegation that the action was brought by Mrs. Fleming for the purpose of acquiring the fee simple title to the real estate for a small sum of money, and that she did actually acquire the title for much less than its true value, when coupled with the fact that Mrs. Fleming bought the real estate herself, thereby leading to a strong inference that her purpose was not to convert into money a life estate which she was not able to put to advantageous use, or to make better use of the money than she could of the life estate in the land, because the event shows that she gave up the sum of $14,000 in money for the purpose of gaining the fee simple title to the same property in which in theory she desired to dispose of the life estate. If these premises had been sold to strangers, we would not hesitate to say that the proceedings were not only free from error but the entire transaction free from any taint of fraud. A careful examination of this record, coupled with the rather unsatisfactory allegations of fraud, leads to much more than a suspicion that the court entering the decree was not as careful as might be desired, and the further suspicion that the guardian ad litem had not discharged his full duty. Inasmuch as the rights of no innocent purchasers have intervened we think the dictates of substantial justice require that the demurrer should be overruled, that the interested de *366 fendants be required to answer, and that a better opportunity will be thereby afforded to do substantial justice between all parties interested.

Judgment reversed.

Johnson, Hough and Wanamaker, JJ., concur.